## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAY L. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-CV-605-SAJ |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kay L. Hall, ("Plaintiff") appeals the decision of the Commissioner denying her a period of disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that the ALJ erred (1) by formulating a residual functional capacity ("RFC") assessment for Plaintiff that failed to include all of her limitations; and (2) by determining at Step Five of the sequential evaluation process that there was other work Plaintiff could perform. For the reasons discussed below, the Court hereby affirms the Commissioner's decision.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on July 30, 1964, and was 41 years old at the time of the ALJ's decision. (*E.g.* R. 19, 64.) She completed high school and has worked as a day care provider, customer service manager, and administration manager. (R. 76, 488, 503.) She

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of § 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

initially alleged that she became disabled on June 2, 2001, due to fibromyalgia, chronic fatigue syndrome, immune disorder, irritable bowel syndrome, and memory loss. (R. 75.)

Plaintiff filed her application for disability insurance benefits on January 5, 2004.[3] (R. 64-66.) After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing. Administrative Law Judge (ALJ) Richard A. Say held the hearing on September 13, 2005 (*see* R. 484-511), and issued an unfavorable decision on December 23, 2005. (R. 15-27.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on September 8, 2006. (R. 6-8.) Plaintiff now seeks judicial review.

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy, . . . .

---

[3] Plaintiff protectively filed on December 17, 2003. (*See* R. 63.)

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).[4/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

---

[4/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found, among other things, that Plaintiff had engaged in substantial gainful activity through August 31, 2003, but not thereafter. He determined that she had severe fibromyalgia, depression, anxiety, and somatoform disorder,[6] but no impairment of combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ considered Plaintiff's testimony credible only to the extent consistent with an RFC for a wide range of medium work. However, her RFC was limited

---

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

[6] A Somatoform Disorder exists when there are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (2000).

by her inability to perform medium work activity requiring understanding, remembering, and carrying out detailed instructions or frequent interaction with the general public. The ALJ found that Plaintiff was unable to perform her past relevant work, but there were a significant number of jobs in the regional and national economies that she could perform. He concluded that Plaintiff had not been under a "disability" as defined in the Social Security Act at any time through the date of his decision. (R. 25-26.)

## IV.  REVIEW

Plaintiff's first argument is that the ALJ erred by formulating an RFC assessment for Plaintiff that failed to include all of her limitations. Specifically, Plaintiff asserts that the ALJ failed to properly consider the limited use she had of her left arm as the result of ulnar nerve surgery, her fibromyalgia, and her mental condition. More specifically, Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of both treating and consultative physicians, and he failed to properly analyze Plaintiff's credibility.

**A.     Left Ulnar Neuropathy at the Elbow**

When Plaintiff filed her application, she did not allege that the limited use of her left arm was a disabling impairment. Nonetheless, the ALJ recited the medical evidence relevant to the condition. (R. 21.) This evidence included an electromyogram and nerve conduction studies on September 13, 2004 (R. 335-37) showing that Plaintiff had left ulnar neuropathy at the elbow, that she underwent a decompression and anterior submuscular transposition of the left ulnar nerve at the elbow on October 5, 2004, and that, when she was last seen by Michael B. Clendenin, M.D., for this condition on November 9, 2004, she had made good progress, but had not met full extension, was tender to examination, and

was to be referred for formal therapy. (R. 333-34.) Later in the opinion, the ALJ noted that Plaintiff did not keep her appointment with Dr. Clendenin on December 13, 2004, and did not seek further treatment for her elbow. (R. 23.) Accordingly, he was "persuaded that surgery resolved the claimant's problems with her elbow." (*Id.*)

Plaintiff testified that she was unable to participate in the recommended therapy due to her other medical conditions, that she still does not have feeling in her ring finger and the pinky finger of her left hand, and that she still cannot grip things with her left hand. (Opening Br., Dkt. # 16; *see* R. 492.) Plaintiff's assertions to the contrary, the ALJ did evaluate Plaintiff's credibility and dismissed these complaints based on records showing that she did not keep her last appointment and did not seek further treatment. (R. 23.)

Plaintiff did not complain about her left arm when she visited Peggy Krisa, M.D., twice in 2005, and Dr. Krisa made no mention of any problem with Plaintiff's left arm during those two visits. (*See* R. 429-31, 450-51.) There is no other medical evidence in the record to support Plaintiff's allegations regarding limited use of her left arm. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). The ALJ did not err by failing to include her alleged left arm limitations in his RFC.

**B.     Fibromyalgia**

On June 4, 2001, neurologist Barbara Hastings, M.D., diagnosed Plaintiff with fibromyalgia based upon her examination of Plaintiff and review of an MRI and x-rays taken of Plaintiff. (R. 112-13.) Four other treating physicians subsequently noted fibromyalgia

6

in their treatment notes and/or diagnoses.  R. 197-98, 202-04, 248, 250-52, 256, 338, 341, 420, 429, 431, 472 -74, 476-79.)  Her chiropractor stated that she had "multiple trigger [points]" and  muscle spasms in her neck, shoulders and back.  (R. 390.)  The consultative examiner who evaluated Plaintiff for psychological impairments also noted her fibromyalgia diagnosis.  (R. 219.)

The ALJ acknowledged that Plaintiff had been diagnosed with fibromyalgia, and then stated:

> Fibromyalgia is a disease recognized by the Court of Appeals for the Tenth Circuit in *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739 (10th Cir. 1993).  As noted by the court, and therefore, as recognized by the undersigned, there is no "dipstick" laboratory test for fibromyalgia. *Id.* at 734-44.  However, the American College of Rheumatology in 1990 established the criteria for classification of fibromyalgia as requiring pain in eleven of eighteen tender point sites on digital palpation.  The evidence of record in the instant claim does not reflect at any time during the relevant period the existence of the requisite number of trigger points.

(R. 22.)  The ALJ's understanding of how fibromyalgia is diagnosed is accurate, but his citation is not.  The case to which the ALJ cites addresses chronic fatigue syndrome; fibromyalgia is not mentioned.  Although both conditions are difficult to diagnose, the two conditions are not the same.

> Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003).  The disease is "poorly-understood within much of the medical community [and] ... is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke*, 379 F.3d at 590. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d

    Cir. 2003).  Fibromyalgia can be disabling. *Kelley v. Callahan*, 133 F.3d 583,
    589 (8th Cir. 1998).

*Brown v. Barnhart*, No. 05-5143, 2006 WL 1431446 at **2  n. 1 (10th Cir.  May 25, 2006) (*unpublished*); *Moore v. Barnhart*, No. 03-3253, 2004 WL 2634571 at **8 (10th Cir. Nov. 19, 2004) (unpublished).[7/]

    In his written opinion, the ALJ finds at Step Two of the sequential evaluation process that claimant's fibromyalgia is severe.  Plaintiff argues that the ALJ then dismissed or disregarded her fibromyalgia diagnosis and failed to give substantial weight to the opinions of her treating physicians.  The problem with plaintiff's argument is that no treating or consultative physician opined or even suggested that her fibromyalgia was totally disabling. As the ALJ pointed out, "[t]he pain experienced by the claimant is limiting but, when compared with the total evidence, it is not severe enough to preclude all types of work.  The issue is not the existence of pain or other symptoms, but whether the symptomatology experienced by the claimant is of sufficient severity as to preclude her from engaging in all types of work activity." (R. 22.)  In addition to Plaintiff's fibromyalgia diagnosis, the ALJ evaluated Plaintiff's allegations of fatigue and pain, and specifically stated that, while he did not discount all of her claimants, "an individual does not have to be entirely pain free in order to have the residual functional capacity to engage in substantial gainful activity." (R. 24.)

    The Court finds that the ALJ did not fail to adequately address whether Plaintiff's fibromyalgia had an negative effect on her ability to perform work activities.  To do so would

---

[7/] The Court recognizes that "[u]npublished decisions are not precedential, but may be cited for their persuasive value."  10 Cir. R. 32.1.  The Court has not been able to find a clearer definition and explanation of fibromyalgia in the published opinions of the Tenth Circuit.

be to erroneously "reweigh the evidence [ ]or substitute its judgment for that of the Commissioner." *See Qualls*, 206 F.3d at 1371.

**C.     Mental Condition**

The ALJ also properly evaluated Plaintiff's mental impairment. He found that her depression, anxiety, and somatoform disorder were "severe" impairments at Step Two of the sequential evaluation process and then proceeded to recite the medical evidence and the testimony which led to the limitations he placed on her residual functional capacity to perform medium work. He also noted Plaintiff's allegations that she was not working due to doctor's orders. (R. 23, referencing R. 84, 493.) He discounted her allegations, however, [a]fter a thorough review of the record, [because he had] not found a doctor's statement that the claimant was disabled and unable to work." (R. 23.)

> The ALJ then explained:
>
> The claimant has been assessed with depression and anxiety, and has been treated sporadically with mixed success. She continues to take medication. The claimant testified that she drives to pick up her children and to the grocery store. On testing she had no impairment in concentration or memory. The Administrative law Judge is persuaded that the claimant is able to perform simple, unskilled work activity with a moderate limitation in interacting with the general public. This is supported by the fact that the claimant was able to maintain a daycare center, caring for up to 7 children, and completing paperwork fo DHS. Further, the claimant has been free of psychotic symptoms and her judgment has been intact. Her thought processes were within normal limits, and she denied suicidal ideations.

(R. 23.) In making this assessment, the ALJ cited to the consultative examination of Michael D. Morgan, Psy. D. (*See* R. 216-20.) Plaintiff faults the ALJ for failing to point out that Dr. Morgan assigned a Global Assessment of Functioning ("GAF") score for Plaintiff of 41 to 45 and for failing to assign more weight to Dr. Morgan's prognosis.

The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV-TR") (Text Revision 4th ed. 2000) at 32; *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006). A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation ... ) OR any serious impairment in social, occupational, or school functioning (e.g., ... unable to keep a job);" whereas a GAF rating between 51 and 60 indicates moderate symptoms or impairments in these categories. DSM-IV-TR at 34; *Langley v. Barnhart*, 373 F.3d 1116, 1123 n. 3 (10th Cir. 2004). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." DSM-IV-TR at 34. A GAF score of 65 falls within the middle of the range indicating "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* Prior to her appointment with Dr. Morgan, Plaintiff had tested at 65 in August of 2003 (R. 425) and at 50 - 55 in September 2003. (R. 256.)

"[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, No. 07-5087, 2007 WL 4554293 at *8 (10th Cir. Dec. 28, 2007) (unpublished) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (10th Cir. 2002); *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224 **3 (10th Cir. Dec. 8, 2004) (unpublished)). Plaintiff argues that the ALJ should have assigned more weight to Dr. Morgan's prognosis:

> The claimant reports signs and symptoms consistent with major depression that is currently severe without psychotic features. She reports her depression deepens when her pain from fibromyalgia becomes worse. She also meets the criteria for generalized anxiety disorder. She has been in psychotherapy and on appropriate psychotropic medication for about a year, without improvement. If her medical conditions can be controlled, so as to prevent them from exacerbating her depression and anxiety, she may be able to achieve a more normal level of psychological functioning, after two to three years.

(R. 219.) While this prognosis is indicative of a severe impairment, it does not necessarily mean that Plaintiff is unable to perform any work, given the limitations the ALJ placed on her residual functional capacity. More important, concurrent and subsequent medical reports support the ALJ's conclusion that Plaintiff was not disabled.

The ALJ pointed out that Dr. Kristy Griffith, M.D., had treated Plaintiff for her mental impairments from September 2003 to September 2004. (R. 21; *see* R. 247-58, 391-93.)[8] Dr. Griffith's progress notes and other notations in the record indicate that Plaintiff's depression was due, at least initially, to situational stressors such as Plaintiff's grief over the death of her father, family relationship problems, and her mother's illness. (*See* R. 248, 250, 255, 416-19, 426.) Situational stressors are one factor in a mental impairment assessment which tend to weigh against a finding of disability. *Cf. Lopez v. Barnhart*, No. 03-2035, 2003 WL 22351956 at **3 (10th Cir. October 16, 2003). Treatment notes show that, although Plaintiff was often tearful and depressed, she was usually clean and well

---

[8] Dr. Griffith initially evaluated Plaintiff on August 6, 2003, and referred her for outpatient therapy at St. John Medical Center. (R. 425.) Plaintiff was seen twice by Gloria Crotty, LPC, on August 12, 2003 and September 11, 2003. (R. 418-19.) Plaintiff failed to show for her next appointment. (R. 418.) Dr. Griffith then began seeing Plaintiff, and referred her for outpatient counseling again on March 16, 2004 (about the time she was seen by Dr. Morgan, the consultative examiner). (R. 247-58.) However, Plaintiff never kept an appointment and her file at St. John was closed "for inactivity" on May 10, 2004. (R. 418.) Dr. Griffith saw Plaintiff on April 7, 2004, but not again until August 12, 2004; the last date of treatment in the record is September 30, 2004. (R. 392-93.)

groomed, she denied suicidal or homicidal ideations and visual or auditory hallucinations. (R. 247-48, 252, 254-57 392-93, 419, 425-26.)

Plaintiff did not see Dr. Griffith from April until August of 2004.  Although Plaintiff stated that she was "doing very poorly still" in August 2004, she claimed to be "doing a lot better" more than a month later in September 2004. (R. 392.)  In the last report by Dr. Griffith in the record, Dr. Griffith reported that Plaintiff's mood was "improved" and that Plaintiff was sleeping.  (*Id.*)  Plaintiff again denied suicidal or homicidal ideation or auditory or visual hallucinations, and she denied side effects from medication.  (*Id.*)

The procedure or "technique" for evaluating a mental impairment is outlined at 20 C.F.R. §§ 404.1520a, 416.920a and the Listing of Impairments.  The procedure first requires the Commissioner to evaluate a claimant's "symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1); 416.920a(b)(1). Listings generally include a set of medical findings referred to as "paragraph A criteria" or "Part A" criteria.  The Commissioner "must then rate the degree of functional limitation resulting from the impairment(s)," using what is generally referenced as the "paragraph B" or "Part B'" criteria of the Listings. *Id.* at §§ 404.1520a(b)(2); 416.920a(b)(2). Finally, the Commissioner must document application of the technique. *Id.* The following four functional areas are considered under Part "B" of the Listing at 12.04: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* at 404.1520a(c)(3); 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). If the Commissioner rates the degree of a claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the Commissioner generally

concludes that the alleged impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1); 4164.920a(d)(1).

The ALJ followed this procedure. (*See* R. 23-24.) Even though Dr. Morgan reported a guarded prognosis and a GAF score of 41-45 for Plaintiff at the time of the examination in March of 2004, his report also indicates Plaintiff's own statement that her medications were effective. (R. 216.) Further, Plaintiff reported that she shared social activities with her family, and could take care of all her personal grooming needs, drive without restriction, and manage her own financial matters. (R. 217.) She had no impairment in concentration or memory, her speech was normal, her thought process was normal, and she exhibited good judgment. (R. 217-18.) Her mood, affect, and anxiety were consistent with the consultative examiner's diagnosis of major depressive disorder, single episode, severe without psychotic features, and generalized anxiety disorder, but there is no indication from the consultative examiner that Plaintiff would be unable to perform work consistent with the residual functional capacity limitations found by the ALJ.[9]

## V. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows the correct legal principles and is supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

---

[9] Plaintiff's second argument is that the ALJ erred by determining at Step Five of the sequential evaluation process that there was other work Plaintiff could perform. This second argument is based on Plaintiff's first argument that the ALJ failed to include all of Plaintiff's limitations in his RFC assessment. As the Court has fully considered Plaintiff's allegations in the discussion relevant to the first argument, the Court sees no need to address the second.

It is so ordered this 11th day of February, 2008.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge